**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** **Plaintiff,** v. **QINLIANG CHEN,** **Defendant.** | **Case No. 1:22-CR10279-AK** |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Qinliang Chen respectfully submits this memorandum in support of his sentencing recommendation of time-served (51 days) followed by two years of supervised release.

**The Individual Before the Court**

Mr. Chen is a 33-year-old husband and father. Born on Christmas day in 1990, he comes from a close-knit working-class family in mainland China and had an uneventful childhood. But as a young adult, he came under the scrutiny of the government and ultimately fled the country with his wife Jin Cheng Fen in 2016, seeking political asylum in the United States.

They landed in the Inland Empire outside Los Angeles. While they were happy to be in a country that believed in

1

freedom and opportunity, the transition was hard.  They did not speak English, and there was a vast cultural gap.  They also were forced to leave their young daughter with his parents in China, which was necessary but a devastating separation.

Despite the challenges, Mr. Chen and his wife wanted to do things right.  They submitted formal applications for asylum with immigration authorities, sought and received employment authorization visas, and requested and received social security cards.  Finding work was not easy.  He made connections with other Chinese immigrants, and took whatever jobs they helped him secure, from dishwashing to changing oil.  His wife found work as a server in a restaurant, and they were scraping by.  Unfortunately, it was at this point others in his community offered him an opportunity to make extra money as a money courier.

As someone with no sophistication or experience in such matters, everything was laid out for him.  He was told where to go to pick up cash, he was given airline tickets and a hotel room, and given a phone number for whomever would pick up the money.  In a couple of days traveling to Florida, he would make $2000.00, so he agreed.  He went a second time, and this time the agents used local police officers to stop him, secure his consent to search his car, and seize the money in his rental vehicle.

Those two deliveries occurred in August and September, 2022.  After the money was seized during the second

delivery, Mr. Chen decided he wanted no further involvement and that was that.  A month later, on October 17, 2022, he was arrested in the Central District of California (without incident) on charges in this case.

He remained detained and was transferred by the Marshals to the District of Massachusetts – an unpleasant experience under any circumstances, excruciating for Mr. Chen, who had great difficulty communicating with officers or fellow inmates.  Once here, his application for bond was granted and he was released on December 7, 2022, after nearly two months in custody.

Since his release, Mr. Chen has done extremely well on pretrial release.  He has been working two, and sometimes three, jobs – as an Uber driver, as a line cook, and as a car mechanic.  His compliance does not come as any surprise – he has no history of substance abuse or mental illness, no involvement in gangs or other anti-social behavior – but does bode well for his future supervision post-sentencing.

Mr. Chen was charged in Boston, a place he had never been before.  He pleaded guilty and, with great shame for breaking the laws of a country in which he is a refugee, is looking forward to apologizing to the Court in person, accepting his punishment, and moving forward in his life.

**The Sentencing Guidelines/3553(a) factors**

**Introduction.**

After *United States v. Booker*, 543 U.S. 220, 259 (2005), the sentencing guidelines are not mandatory. The

sentencing court must accurately compute the sentencing guidelines, which are the "starting point and the initial benchmark," but which may not be presumed reasonable. *Gall v. United States*, 552 U.S. 38, 49-51 (2007).

The Court must then turn to the 18 U.S.C.  3553(a) factors, and its obligation to impose a sentence sufficient but no greater than necessary to comply with the statutory sentencing goals.  The Court is unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 53 (2007) (*quoting Koon v. United States*, 518 U.S. 81 (1996)).

Indeed, a defendant's conduct must be measured against his overall life.  Put another way, "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011).  Federal statutes are in accord.  The Court may consider, without limitation, any "information concerning the background, character, and conduct of" the defendant. 18 U.S.C. §3661; U.S.S.G. §1B1.4.

**The Guidelines Calculations.**

Turning to the Guidelines, Mr. Chen agrees with the PSR's preliminary calculations regarding the base offense level, certain specific offense characteristics, acceptance of responsibility, the zero-point offender departure, and his Criminal History Category, as follows:

1.  Under USSG §2S1.1(a)(2), the base offense level is 8. (PSR prg. 25)

2.  The two seizures amounted to approximately $285,000.  Under USSG §2S1.1(a)(2)'s cross-reference, there is a 12-level increase under USSG §2B1.1(b)(1)(G) ($250,000-$550,000).  (PSR prg. 25)

3.  There is a 2-level increase for 18 U.S.C. §1956 money laundering conviction under USSG §2S1.1(b)(2)(B).  (PSR prg. 27)

4.  A 2-level reduction pursuant to USSG §3B1.2(b) is warranted for Mr. Chen's status as a minor participant.[1]  (PSR prg. 29)

---

[1]    Probation's Initial PSR did not indicate that Mr. Chen was a minor participant.  The defendant objected and Probation found, "[u]pon further review of the caselaw [sic.] and corresponding guidelines, ... that the two level decrease pursuant to USSG §3B1.2(b) does apply. ..." Because the initial PSR did not indicate that Mr. Chen was a minor participant, the government did not object to Probation's ultimate finding that USSG §3B1.2(b) applies and may argue that it doesn't at sentencing.  Accordingly, the defendant will address the applicability of USSG §3B1.2(b) in this sentencing memo.

5.  There is also a 2-level downward departure under
    USSG §4C1.1 for Mr. Chen's status as a zero-point
    offender.  (PSR prg. 32)

6.  There is a 3-level reduction for acceptance of
    responsibility under USSG §3E1.1.  (PSR prgs. 33-
    34)

Accordingly, his Total Offense Level is 15.  (PSR
prg. 35)  Mr. Chen has no criminal history points and thus
is in Criminal History Category I.[2]  (PSR prg. 39)  His
Federal Sentencing Guidelines are 18 to 24 months.

**Minor Role**.

In his objections to the Presentence Report, Mr. Chen
argued that his conduct as a money courier was minor
compared to the average participant, and he should receive a
mitigating role reduction under USSG §3B1.2 similar to co-
defendant Mariano Santana.

Probation did not assign a minor role to Mr. Santana.
He objected and, during his sentencing hearing, the Court
determined that a minor role adjustment was appropriated and
lowered his Offense Level by 2 points.  (Docket Entry 212)

Mr. Chen contends that, similar to co-defendant Mariano
Santana, Mr. Chen was simply one of lead defendant Jin Hua

---

[2]    Mr. Chen's lone arrest in 2019 generates no criminal
history points but deserves mention.  In California,
marijuana is legal, and much of it is grown in Riverside
County, where Mr. Chen resides.  The large-scale marijuana
manufacturers routinely hire unskilled laborers to assist
with trimming and packaging.  Mr. Chen was working as such a
laborer when authorities conducted a raid.  As is often the
case, he was arrested with others but no charges were filed.

Zhang's couriers.  Accordingly, like with Mr. Santana, Mr.
Chen's Offense Level should be reduced by 2 points due to
his minor role.  As articulated in the PSR, at paragraphs 14
through 19 Zhang and Undercover Agent UC-2 communicated via
an App called Telegram.  In mid-August and mid-September
2022, Zhang told UC-2 that a courier would be delivering
$120,000 in August and $150,000 in September.  Those amounts
turned out to be $125,675 (in August) and $161,905 (in
September).  That courier was Mr. Chen.

Like wise, co-defendant Santana, on two occasions in
June 2022, met an FBI cooperating witness in a parking lot
and delivered a total of just under $60,000 in cash to him.
On both occasions, the FBI cooperating witness sent a
message to Zhang over an encrypted messaging application
that the bulk cash had been dropped off.  Zhang caused the
funds to be converted into cryptocurrency while keeping a
fee and then sent the cryptocurrency back to his clients.
(Government Sentencing Memo for Santana; Docket Entry 211,
p. 2)

A defendant's role must be evaluated based on his
relevant conduct as a whole.  United States v. Vargas, 560
F.3d 45, 50 (1st Cir. 2009), citing United States v.
Rodriguez De Varon, 175 F.3d 930, 943 (11th Cir. 1999)
(explaining that a defendant is not automatically precluded
from a mitigating role adjustment where he is held
accountable only for the amount of drugs that he personally
handled); see also USSG §3B1.2, (App. Note 3(A) – "a

defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline").

A defendant who seeks a downward adjustment due to an ostensibly mitigating role in the offense of conviction bears the burden of proving his entitlement to that reduction.  United States v. Mateo Espejo, 426 F.3d 508, 512 (1st Cir. 2005).  He must carry that burden by a fair preponderance of the evidence.  United States v. Teeter, 257 F.3d 14, 30 (1st Cir. 2001).  When a defendant seeks a downward adjustment for a minor role, the necessary showing entails proof both that he is less culpable than most of those with whom he collogued and that he is less culpable than others who have committed similar crimes.  United States v. Ocasio, 914 F.2d 330, 333 (1st Cir. 1990).

Mr. Chen and Mr. Santana simply took orders from Zhang and carried them out.  Mr. Chen suggests that, like Mr. Santana, his role was minor.  Zhang was Mr. Chen and Mr. Santana's boss.  Mr. Chen and Mr. Santana were couriers.  It is Mr. Chen's contention that the PSR demonstrates, by a preponderance of the evidence, that he is entitled to 2 point downward role adjustment pursuant to USSG §3B1.2(b).

**Zero-Point Offender Commentary.**

Before turning to an appropriate sentence, Mr. Chen notes the Sentencing Commission's recent introduction of the zero-point offender departure in USSG §4C1.1 reflected a policy goal of keeping non-violent first-offenders like him out of custody. *See* 28 U.S.C. § 994(j) ("The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense…"). Echoing the statutory provision in § 994(j), the imprisonment provisions of the Guidelines, section 5C1.1, includes commentary that:

> "A departure, including a departure to a sentence other than a sentence of imprisonment, may be appropriate if the defendant received an adjustment under §4C1.1 (Adjustment for Certain Zero-Point Offenders) and the defendant's applicable guideline range overstates the gravity of the offense because the offense of conviction is not a crime of violence or an otherwise serious offense."

USSG §5C1.1, commentary, note 10(B). The term "otherwise serious offense" is not defined in the Guidelines or elsewhere. Of course, any federal felony is serious, so the Guidelines contemplate relative seriousness.

Typically, the Guidelines view the seriousness of an offense based on offense level. For example, the Grouping provisions for multiple convictions does this explicitly. *See* USSG §3D1.4(a) ("Count one additional Unit for each Group that is equally serious or from 1 to 4 levels less serious."). Here, Mr. Chen's adjusted offense level of 15

puts him toward the bottom of the Guidelines Zone D,
signaling the relatively low seriousness of his offense
compared to others.  It also is not a drug trafficking,
terrorism, firearms, or violent offense.   The Sentencing
Guidelines, therefore support a non-custodial sentence.

**The 3553(a) Factors and a Reasonable Sentence**.

Turning to the 3553(a) factors; the Court is familiar
with them and they need not be ticked off mechanically.  Mr.
Chen suggests these factors support a probationary sentence.

Mr. Chen was a money courier who played a small and
interchangeable role in a larger money laundering
conspiracy.  The sheer number of similarly situated
defendants makes that point.  He was far from a mastermind,
and certainly not a leader, organizer, or supervisor.  To
the contrary, he was what in drug cases we call a "mule,"
and in money cases we call a "smurf" – a low-level courier
entrusted with a discreet task for a relatively small
remuneration.

As for his history and characteristics, they are
positive.  A political refugee, a young husband and father
with a solid work history.  No drug use or alcohol abuse, no
gangs, no history of violence.  After nearly two months in
custody, he has been on pretrial release for around 20
months without a single incident.  It seems there is little
concern for specific deterrence given this track record.

As for general deterrence, someone contemplating a
similar offense would have to acknowledge the likelihood of

interdiction, arrest, months in custody, and a felony
conviction.  There is little need to consider the need for
custodial treatment.

Turning to sentencing disparity, the Court has
sentenced just one defendant, Mariano Santana.  Mr. Santana
was similarly situated, a courier who delivered money to
undercover agents on two occasions.  The Court imposed a
time-served sentence followed by three years of supervised
release.

Mr. Chen deeply regrets his involvement in this
offense.  He recognizes separate and apart from the Court's
sentence there may be an even worse consequence – there is a
real risk he will lose his asylum claim, be separated from
his wife, and face deportation to China.  But even if he is
able to avoid that fate, he has more than learned his lesson
here.

Under all the circumstances, time-served is a
reasonable sentence that complies with the parsimony
principal embodied in the sentencing statute.  He therefore,
and respectfully, asks the Court to impose time-served,
followed by two years of supervised release.  Should the
Court feel any further sanctions are appropriate, it could
impose home confinement and/or community service.

That way, he could fulfill his family responsibilities
while he also pays any debt to society in a positive way.

**Respectfully submitted,**

**QINLIANG CHEN**

**By his attorneys:**

/s/ Victor Sherman
_____

**VICTOR SHERMAN**
**(CA SBN 38483)**
**LAW OFFICES OF VICTOR SHERMAN**
**11400 West Olympic Boulevard**
**Suite 1500**
**Los Angeles, CA  90064**
**Telephone (424) 371-5930**

**Email:**
**victor@victorsherman.law**

**and**

/s/ Thomas Kerner
_____

**THOMAS KERNER**
**Attorney at Law**
**(MA BBO 552373)**
**240 Commercial Street**
**Suite 5A**
**Boston, MA  02109**
**Telephone (617) 720-5509**

**Email:**
**thomas.kerner@comcast.net**

### CERTIFICATE OF SERVICE

I, Thomas Kerner, hereby certify that true copies of this memorandum were served on all registered participants via CM/ECF on today's date, September 16, 2024

/s/ *Thomas Kerner*
_____

**THOMAS KERNER**