UNITED STATES OF AMERICA

DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 22-CR-10279-AK-9

UNITED STATES OF AMERICA

V.

QINLIANG CHEN

**RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

Now comes defendant Qinliang Chen and responds to the government's sentencing memorandum. At the outset of this response, it is the defendant's contention that the government violated F.R.Crim.P 32(f)) and USSG §§6A1.1-3 by not objecting to the initial PSR in which Probation's Guidelines calculations included a 2 point downward adjustment pursuant to USSG §4C1.1 (PSR, ¶ 32) and no adjustment pursuant to USSG §2S1.1(b)(1).

The Rules state that "[W]ithin 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." The government never filed an objection to PSR paragraph 32 nor objected that Probation failed to adjust the defendant's Guidelines pursuant to USSG §2S1.1(b)(1). Accordingly, Probation never had the opportunity to take action on those issues pursuant to F.R.Crim.P. 32(f)(3) and (g) by investigating further, revising the PSR as appropriate

and submit to the Court and to the parties an addendum containing any unresolved objections, the grounds for those objections and the Probation Officer's comments on them.

The defendant contends that an appropriate sanction would be for the Court to strike from the government's sentencing memorandum the following sections which deal with those issues:

1. From the third line of page 4 ("the government agrees that, at the very least, ...") to the fourth line of page 6 ("... either in the U.S. or overseas.");

2. The first sentence of page 7 (The government suggests ...") and

3. The last paragraph on page 8, which runs onto page 9 ("This makes Chen ... these defendants' sentences to come.").

The government raised no objections at all to the initial PSR, let alone the objections it now urges the Court to rule its way. Likewise, the government did not raise any disagreement with the calculation in the Final Presentence Report. Thus, even the government's objection in its sentencing memorandum to Probation's adopting the defendant's timely objection to Probation's initial failure to factor in the defendant's minor role[1] is patently untimely and consideration of it by the Court is inappropriate and unwarranted.

To be sure, the Court may permit a late objection at any time before it imposes its sentence upon a finding of good cause

---

[1] See, PSR, prg. 29 and page 21 of the Final PSR dated September 6, 2024.

shown.  F.R.Crim.P. 32(i)(1)(D).   Undersigned counsel is sympathetic to the work load experienced by federal prosecutors and did not oppose the government's motion for an enlargement of time to file its sentencing memorandum.  The defendant was not anticipating the government to raise issues that, pursuant to the Federal Rules, were long settled.

Permitting the government to raise its objections at the eleventh hour significantly prejudices the defendant.  Given the lack of any objections relating to USSG §2S1.1(b)(1) and USSG §4C1.1, the defendant did not even address the USSG §2S1.1(b)(1) issue in his sentencing memo.  He referenced the Sentencing Commission's Zero Point Offender Commentary (D's Sentencing Memo, pp. 9-10) but was not placed on notice that the government would be objecting to the defendant receiving the 2 point downward adjustment pursuant to USSG §4C1.1 which is noted at paragraph 32 of the PSR.

The allegation that Mr. Chen "knew or believed that any of the laundered funds were the proceeds of, or were intended to promote (i) an offense involving the manufacture, importation, or distribution of a controlled substance or a listed chemical; ..." has not been addressed by Probation.  The Court is being called upon to consider the matter without Probation's informed input.

In short, the PSR has set forth the salient circumstances of the offense as well as Mr. Chen's history in detail and the

defendant has filed a sentencing memoranda with his recommendation and letters of recommendation.

Aside from the unnecessary complication created by the government's extremely tardy objection, the matter is ready for sentencing. The Court should therefore ignore the government's suggestion that the Court revisit the Probation Department's calculation of the advisory guidelines sentencing range and instead adopt the range set in the PSR.

Nevertheless, should the Court consider the sections of the Government's sentencing memo which the defendant contends should be stricken, he responds as follows:

**A. The zero-point offender provision applies**.

In the first of two unusual arguments, the government implicitly asks Court not to apply the correctly calculated Guidelines. It reluctantly recognizes Mr. Chen "may qualify" for the zero-point offender adjustment in section 4C1.1, but suggests the Court has discretion not to apply the two-level reduction. Govt. Memo (ECF no. 353) at 4 and n.1.

This is nonsense. Like all Guidelines provisions, section 4C1.1 either applies or it does not. Under the plain language of the provision, the adjustment is mandatory: "If the defendant meets all of the following criteria … decrease the offense level … by 2 levels." USSG § 4C1.1. Here, the PSR found Mr. Chen qualified under the provision's ten factors. PSR ¶ 32. The

government did not object, nor does it point to any inapplicable factor.

The government nevertheless argues the Court has "substantial discretion in deciding whether to reduce a sentence." Govt. Memo at 4 n.1. (quotation omitted). The three cases it cites, however, do not say a court can simply disregard an applicable guideline adjustment. Instead, the cases discuss an unrelated issue: a court's authority to reduce a sentence under 18 U.S.C. § 3582(c) based on subsequent guidelines changes. *Id*. (citing *Vautier*, *Young*, and *Mazara-Munoz*).

The actual law is straightforward and clear: "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007); *United States v. Demers*, 842 F.3d 8, 12 (1st Cir. 2016) ("Our starting point is uncontroversial: in order to achieve procedural reasonableness, a sentencing court must correctly calculate the GSR [Guideline Sentencing Range]."). While a court can deviate when it turns to the relevant 18 U.S.C. § 3553(a) factors, it cannot simply disregard an applicable guideline.

Here, there is no dispute; the 4C1.1 adjustment applies, and the Court must include the reduction in its Guidelines calculations.

**B. No enhancement for knowledge of drug proceeds.**

The government's second argument is more of the same. It argues for the applicability of an enhancement *it does not seek*. The six-level money laundering enhancement applies only where the defendant "knew" or "believed" the funds were drug proceeds. USSG § 2S1.1(b)(1).

Although the government attempts to shift the burden to Mr. Chen – arguing "it is not credible for Chen to suggest that he had no idea the funds he dropped off were drug proceeds" – the law provides otherwise. Govt. Memo at 5. The First Circuit, like all the rest, has long held that "[t]he government bears the burden of proving a sentencing enhancement[.]". *See,* e.g., *United States v. Newton*, 972 F.3d 18, 20 (1st Cir. 2020).

As to the actual evidence, the indictment itself is not limited to laundering of drug proceeds. Count 1 – the instant offense – charges a conspiracy to launder "the proceeds of *some form* of specified unlawful activity, that is *wire fraud*, … and the distribution of controlled substances." ECF no. 114 (superseding indictment) at 1-2 (emphasis added). With a charging document that allows culpability for laundering wire fraud proceeds or drug proceeds, in trying to prove Mr. Chen knew he was dealing with drug proceeds, the government simply speculates and make inapt comparisons to his co-defendants.

Zhang may have "stated that some of the funds he laundered

6

were proceeds of cocaine and marijuana trafficking." Govt. Memo at 4. Licheng Huang may have been recorded "discussing the fact that the bulk cash shipments … were drug profits." *Id.* What others thought or believed does not help establish what Mr. Chen knew or believed, particularly since there is no evidence he met or communicated with any of these other defendants. Mr. Chen made no such admissions after his arrest, during his plea colloquy, or to Probation.

The government did not object to the Presentence Report's Guidelines calculations, and specifically states it "is not advocating for this enhancement." In other words, the government makes an inapposite argument for a position it does not support. The Court should reject the government's efforts to nonetheless use this non-factor to increase Mr. Chen's sentence.

**C. Mr. Chen qualifies for minor role.**

In addition to considering the Minor Role section of the defendant's sentencing memorandum (pp. 6-8) Mr. Chen notes the Sentencing Commission amended the minor role provision to provide additional guidance "because the Commission determined that sentencing courts were applying section 3B1.2 'more sparingly than the Commission intended.'" *United States v. Sarmiento-Palacios*, 885 F.3d 1, 5 (1st Cir. 2018) (quoting Amendment 794 (2015)).

In clarifying and broadening the applicability of section

3B1.2, the Commission provided a non-exhaustive list of factors for sentencing courts to consider in determining whether the defendant was substantially less culpable than other participants in the offense. USSG § 3B1.2, comment n. 3(C)(I)-(v). Each of the five factors favors Mr. Chen.

> **(i) The degree to which the defendant understood the scope and structure of the criminal activity.**

The government's Memo explains the FBI "identified a significant criminal organization" operating in Boston and New York. Govt. Memo at 1-2. Its leader, Zhang, sent couriers to retrieve and deliver cash or wire transfers representing proceeds of fraud or drug trafficking in large sums, arranged for others to convert the funds to crypto currency, and send the crypto currency to its customers. *Id*. "Zhang and his associates laundered at least $25 million" through FBI undercover agents. *Id*. at 2.

In contrast to Zhang and numerous others involved in this sophisticated money laundering conspiracy, Mr. Chen was a nobody. He was not a direct employee of Zhang, and there is zero evidence he had any idea of the scope of the conspiracy or its structure. Indeed, as the government concedes, "[t]here is virtually no chance that Chen … knew Zhang." *Id*. at 5. Instead, he worked for others who hired him to travel to another city to pick up a bag of money and deliver it to someone else. There is no way a sophisticated smuggling operation like Zhang's would provide any

meaningful information to a courier like Mr. Chen.

As the role provision explains, "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant." USSG §3B1.2, cmt. 4 (emphasis added).

### (ii) The degree to which the defendant participated in planning or organizing the criminal activity.

Like the first factor, Mr. Chen may have planned a trip or two from Los Angeles to Florida to retrieve bulk cash, but paying for a flight or renting a car does not evince meaningful "planning" or "organizing the criminal activity. He did not control the date or time when he would leave but would simply follow instructions provided to him by those who hired him.

As the Ninth Circuit recently explained, "the plain language of this factor indicates that the district court must assess the degree to which the defendant participated in devising the plan. The use of the words 'planning or organizing,' as verbs, indicates that the defendant must take an active role in developing the plan. One who simply receives instructions and follows them does not 'plan' or 'organize' the crime." *United States v. Rodriguez*, 44 F.4th 1229, 1236 (9th Cir. 2022). That is what happened here.

9

> **(iii) The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority.**

Along the same lines, Mr. Chen had no real decision-making authority beyond perhaps choosing which car to rent. Every other decision was made for him: meet this man at this time at this location and retrieve a bag of cash, then deliver it to this other man at this time and this location. Again, this factor supports application of the reduction.

> **(iv) The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts.**

Again, Mr. Chen's role was that of a courier with little other knowledge beyond where to go and who to meet, and no real discretion in how to carry out the limited tasks he was given. He may have gone on two trips to Florida, but repeated tasks do not elevate them into something they are not. Nor does an earlier cash seizure change the analysis.

Like Mr. Santana – for whom this Court granted a role reduction – Mr. Chen was a small cog in a big machine, and again in comparison to others, his role was minor. In this regard, the Court must compare Mr. Chen's activities to all other likely participants "including leaders or organizers or those who were otherwise highly culpable." *Rodriguez*, 44 F.4th at 1234.

### (v) The degree to which the defendant stood to benefit from the criminal activity.

The final factor involves Mr. Chen's compensation. Here, he made small amounts – a few thousand dollars – for traveling to pick up and deliver packages of cash.  Where a courier's compensation is "relatively modest and fixed" and not based on "an ownership interest or other stake in the outcome of the trafficking operation," a role reduction is appropriate. *Id*. at 1237.

Because Mr. Chen's role was of limited scope with minimal responsibility, knowledge, or discretion, the Court should apply a minor role reduction.  In this regard, the fact that he was convicted of a money laundering conspiracy – as opposed to a bulk cash smuggling substantive offense which would more closely match his actual conduct – supports a role reduction, precisely because cash smuggling is generally a small component of a sophisticated money laundering conspiracy.

To avoid a red herring argument, Mr. Chen may still receive a role reduction even if, within the laundering conspiracy, he is only being held accountable for the amount of cash he personally delivered.  Section 3B1.2 specifically negates that argument, albeit in the analogous example of a drug courier rather than a money courier: "a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under §

11

1B1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline." USSG § 3B1.2, cmt. 3(A).

Finally, the cases cited by the government in opposition to a role reduction are not helpful.  In *United States v. Gomez-Encarnacion*, 885 F.3d 52, 56-57 (1st Cir. 2018), the court found the district court did not commit clear error in determining a stash-house operator was "well-trusted by the conspirators" and not a minor player.  Further, its preliminary holding that the defendant must show he was both "less culpable than most of those involved in the offense … [and] less culpable than most of those who have perpetrated similar crimes" is no longer consistent with the minor role provision.  As mentioned above, the Commission enacted Amendment 794 to resolve a circuit split by "generally adopt[ing]" the approach requiring comparison to other participants *in the offense* and generally rejecting an approach requiring comparison to the "universe of persons participating in similar crimes."  *Sarmiento-Palacios,* 885 F.3d at 6.  As such, *Gomez-Encarnacion*'s approach no longer applies.

Similarly inapposite are *Ortiz-Santiago, Gonzalez-Soberal*, and *Lopez-Gil,* courier-involved minor role cases decided in 2000, 1997, and 1992, fifteen plus years before the amended minor role established its five-factor test.  *See* Govt. Memo at 6.  If decided under today's rubric, their outcomes would likely change.

*See Sarmiento-Palacios*, 885 F.3d at 6 (holding that Amendment 794 to the minor role provision, "clarifies the Commission's original intent regarding section 2B1.2 and therefore applies retroactively"). There is little doubt couriers currently are eligible for – and routinely receive – minor role reductions in courts throughout our nation.

### D. Time-served is an appropriate sanction.

Regardless of the final guideline sentencing range, the government believes further incarceration is appropriate. It argues Mr. Chen is dissimilar to the other two-time courier this Court sentenced, Mariano Santana, explaining that unlike Santana who is older and labors under mental health and substance abuse problems, Mr. Chen is younger and healthy.

But unlike Santana, Mr. Chen has not racked up numerous prior convictions. While able-bodied (and a hard worker), he is an immigrant and political asylee with limited English skills who has struggled to provide for his family.

After his arrest, he spent nearly two months in custody including cross-country transit from Los Angeles to Boston. As a Chinese-speaker, he had no one to communicate with throughout the process, making it a difficult ordeal. Since his release, he has done very well for nearly two years, working as an Uber driver, a mechanic, and a cook, showing his ability to comport with society's requirements and boding well for his future as a law-

13

abiding member of the community.

As a non-violent first-offender with a low starting point under the Guidelines, Mr. Chen is a strong candidate for a non-custodial sentence. His initial confinement taught him a significant lesson, and he will not re-offend.

**Date: November 6, 2024**          Respectfully submitted,

**QINLIANG CHEN**

**By his attorneys:**

/s/ Victor Sherman

**VICTOR SHERMAN (Cal. SBN 38483)**
**LAW OFFICES OF VICTOR SHERMAN**
**11400 West Olympic Boulevard**
**Suite 1500**
**Los Angeles, California 90064**
**Telephone (424) 371-5930**
**Email: victor@victorsherman.law**

/s/ Thomas Kerner

**THOMAS KERNER (MA BBO 552373)**
**Attorney at Law**
**240 Commercial Street, Suite 5A**
**Boston, MA. 02109-1385**
**Telephone 617-720-5509**
**Email: Thomas.kerner@comcast.net**

### CERTIFICATE OF SERVICE

I certify that a copy of this document will be sent electronically to the prosecutor and Probation.

**Date:**     11/6/2024              /s/ Thomas Kerner
                                     _____
                                     **Thomas Kerner**
                                     **BBO# 552373**