UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 22-CR-10279-AK-2 |
| | ) | |
| LICHENG HUANG, | ) | |
| Defendant | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

After decades as a law-abiding and industrious man trying to make the best of difficult circumstances, Mr. Huang was drawn in, and quickly expelled, from the outer edges of a large criminal enterprise. He facilitated two cash exchanges in a one-month period for a large-scale money launderer. For this conduct, he has accepted responsibility and has entered a guilty plea.

He asks the court that he be sentenced to time served, followed by three years of supervised release. This sentence is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing detailed in 18 U.S.C. §3553(a) in consideration of his conduct, personal circumstances, and lack of criminal history.

### Offense Conduct

Mr. Huang was a small and expendable cog in a much larger machine. The scope of his role, and his lack of authority in the operation, is evident in the conduct with which he is charged. He was involved in two different cash transfers: one on August 6, 2021, and one on August 19, 2021. On each occasion a co-defendant, Feng Chen, arrived alone in a car at a pre-arranged meeting place with the actual cash, it was handed to the witness cooperating with law enforcement (once by way of Mr. Huang and once directly), and the digital currency was transferred to an account controlled by the head of the operation, Jin Hua Zhang, who confirmed its receipt. (PSR ¶13-14). Mr. Huang's role in these transactions was essentially as a conduit of

information to Mr. Zhang, who made the actual decisions and ran the operation. His basically superfluous role in these two exchanges was made even clearer by the fact that numerous transactions followed between the other parties without his involvement at all.

## Mr. Huang's Personal Circumstances

Escaping from religious persecution, Mr. Huang sought to build a life for himself far from his family and from familiar surroundings and supports. His upbringing in a rural farming village in China left him with little in the way of resources and education. He had not completed high school in China, and had practically no English language ability. As he had worked hard during his childhood to support his family, however, he continued to apply himself in the United States, getting by with jobs as a food delivery driver. Unfortunately, his precarious circumstances made him vulnerable to negative associations. He found connections with others from his region in China, with whom he could communicate in a common dialect, but who drew him into their criminal involvement. His activity in this case was an aberration. He has displayed his true character in the year prior to his arrest, without involvement in Mr. Zhang's operation, and in the more than two years since, during which he has fully complied with conditions of release in the community.

## Application of the Sentencing Guidelines

Pursuant to the guidelines, the base offense level for money laundering conspiracy is based on the value of the laundered funds. USSG §2S1.1(a)(2). In this case, the value of the funds involved was $61,050, corresponding to a base offense level of 14. USSG §2B1.1(b)(1)(D). This is subject to an increase of 2 due to the statute under which Mr. Huang was convicted, and an increase of 6 due to the connection of the funds to marijuana trafficking, for an offense level of 22.

Mr. Huang should receive a two-point decrease pursuant to USSG §3B1.2(b) because his conduct makes him a "minor participant" in the charged conduct. "[A] defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an

adjustment under this guideline." USSG §3B1.2, comment. (n.3(C)). Application of this adjustment is particularly appropriate where, as here, the loss amount "greatly exceeds [Mr. Huang's] personal gain…." USSG §3B1.2, comment. (n.3(A)). It is not alleged that Mr. Huang was involved in the criminal activity from which the funds originated, he did not bring the funds to be laundered, he did not receive the funds to be laundered, and payment for the funds went to an account controlled by a different person. His role was so insignificant to these transactions that he was quickly dropped from them, and they continued in nearly identical fashion without him. Application of this adjustment would bring his offense level to 20.

Mr. Huang's offense level should be further subject to a three-level reduction based on his timely acceptance of responsibility. Because he has no criminal history, he qualifies for a further two-level reduction as a zero-point offender. USSG §4C1.1. This results in a total offense level of 15. Based on his criminal history category I, a guideline sentence would be 18-24 months.

## Appropriateness and Availability of Requested Sentence

Ultimately, the court retains the discretion and statutory authority to impose a fair sentence based on an individualized assessment, with the sentencing guidelines just one of several factors to consider. 18 U.S.C. §3553(a). While the guidelines may provide "a rough approximation of sentences that might achieve §3553(a)'s objectives," they are not the final word. Kimbrough v. United States, 552 U.S. 85, 101 (2007). Mr. Huang's below-guideline sentencing request more fairly serves the principles of fair sentencing in this case.

In this instance, the value of the laundered funds provides an imperfect and inflated measure of the scope and seriousness of Mr. Huang's conduct. He played a minimal and merely logistical role in two transactions.  These funds evidently came from marijuana businesses with which he is not alleged to have been involved, not from his own criminal activity or from fraud or theft losses directly impacting victims. While the value of the funds involved might in some sense reflect the magnitude of the harm to international financial systems of shielding criminal enterprises from scrutiny, the ties here are abstract. In terms of Mr. Huang's

personal culpability, it also appears that he had no meaningful role in requesting or negotiating the value of the funds involved: he was asked to set up a meeting for a person with a bag of cash, and a recipient who would send digital currency to a third party in exchange. He did not bring the money to the meeting, and he did not receive the digital currency given in return. In one case, he simply watched the handoff without even touching the bag of money. While the guidelines demand a higher penalty, it is difficult to say that his conduct is substantially more serious than if, for example, the bags his more responsible co-defendants packed and transported happened to have contained $20,000 (which would result in a two-point lower base offense level) instead of $30,000.

Mr. Huang's law-abiding lifestyle also goes beyond what is captured in the guidelines. Not only does he have a "technical" zero-point criminal history score based on the guideline applications for consideration of past court activity, but at the age of 41 he has no prior criminal history. This pattern of general lawful behavior is further reflected in the details of this case; this is not an instance where authorities quickly shut down the operation and arrested all the participants, leaving questions about what further conduct might have taken place. This operation continued to be monitored and to operate for more than a year after Mr. Huang's conduct, but without Mr. Huang's involvement.

### Avoiding Unwarranted Sentencing Disparities

So far, two of the nine co-defendants have been sentenced. Mariano Santana was sentenced to time-served with three years of supervised release. Qinliang Chen was sentenced to 15 months of incarceration.

Mr. Santana's level of involvement is similar to Mr. Huang's, but somewhat greater. Like Mr. Huang, Mr. Santana participated in two money exchanges, each for $30,000. Unlike Mr. Huang, Mr. Santana had personal responsibility for transporting laundered money in these transactions; in each instance, Mr. Santana drove a car that he rented to a pre-arranged location (a parking lot) and handed a bag of cash to CW-1. Another key difference between Mr. Santana and Mr. Huang,

is that Mr. Santana has three criminal history points, placing him in criminal history category II.[1]

By contrast, Mr. Chen participated in at least two money exchanges, the dollar amount of which was $287,000, three times more than Mr. Huang. In addition, there is evidence that Mr. Chen had done this before; in 2020, Mr. Chen was stopped by TSA agents in Orlando International airport with just under $100,000 in undeclared cash in his possession.

Sentencing data produced by probation demonstrates that less than a quarter of similarly situated defendants receive sentences within the guidelines, while the majority receive downward departures or variances. Where Mr. Huang's proposed sentence fairly captures his conduct, and is consistent with judicial trends toward downward departures for similarly situated defendants, it does not pose a risk of unwanted sentencing disparities.

## CONCLUSION

Mr. Huang asks the court to permit him to continue on the law-abiding path to which he has solidly returned in the three years that have passed since his conduct in this case. The recommended punishment is just, humane, and consistent with the 3553(a) factors.

Respectfully submitted,
LICHENG HUANG,
By his attorney,

Date:  December 11, 2024

*/s/Henry Fasoldt*
C. Henry Fasoldt (BBO# 667422)
185 Devonshire Street
Suite 302
Boston, MA 02110
henry@bostondefenselaw.com

---

[1] Although Mr. Santana remained in detention while his case was pending, and Mr. Huang was released into the community, this difference in time served does not create an unfair sentencing disparity. (Doc. No. 212 and 213, PSR ¶1). Mr. Huang's additional time complying with conditions of release should not weigh against him. Any disparity is accounted for by the differing involvement and criminal histories of these two individuals.

**CERTIFICATE OF SERVICE**

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this December 11, 2024.

                                                */s/ Henry Fasoldt*
                                                Henry Fasoldt