UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 22-10279-AK(s) |
| | ) | |
| 5. THONG NGUYEN, | ) | |
| 6. AUGUSTIN VILLA, and | ) | |
| 10. YANBING CHEN, | ) | |
| Defendant | ) | |

SENTENCING MEMORANDUM OF THE UNITED STATES

Defendants THONG NGUYEN, AUGUSTIN VILLA, and YANBING CHEN were charged in the above-captioned superseding indictment with money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h), and, in CHEN's case, with conspiracy to distribute five kilograms or more of cocaine, in violation of Title 21, United States Code, Section 846. Each pleaded guilty – NGUYEN on August 14, 2024, VILLA on August 20, 2024, and CHEN on October 3, 2024. They are set to be sentenced, one after the other, from June 23-25, 2025.

For reasons to be discussed in greater detail at their sentencing hearings, the government respectfully requests that this Court sentence CHEN to 71 months in prison and five years of supervised release; NGUYEN to 30 months in prison and two years of supervised release; and VILLA to 15 months in prison and three years of supervised release. These sentences reflect the relative culpability of each defendant and are sufficient but not greater than necessary to achieve the goals of sentencing. See 18 U.S.C. § 3553(a).

OVERVIEW

The Money Laundering Scheme. During a two-year investigation, the Federal Bureau of Investigation (FBI) identified a significant criminal organization that laundered large sums of money for various criminal groups. Agents first detected the network in greater Boston and

eventually identified the leader of the organization, JIN HUA ZHANG, based in Staten Island, New York, and a number of his criminal associates. The investigation revealed that, for a fee, ZHANG laundered bulk cash for drug dealers and laundered profits from other illegal businesses.

In order to infiltrate ZHANG's operation, undercover agents (UCs) posed as criminal money launderers with access to cryptocurrency. ZHANG and other members of his group would pick up bulk cash or receive wire transfers from illegal business. ZHANG then arranged for the UCs to convert these funds into Tether, a kind of cryptocurrency. In recorded meetings, ZHANG discussed the various sources of these funds, which included profits from cocaine and marijuana trafficking as well as internet-based scams. ZHANG charged a fee for converting the funds to cryptocurrency, and the size of the fee depended on the danger associated with the illegal funds.

The money laundering operation captured by the superseding indictment was massive in scope. In less than one year, ZHANG and his associates laundered at least $25 million worth of drug proceeds and funds from other illegal businesses through the UCs. Agents traced funds from the ZHANG organization to Hong Kong and elsewhere in China, India, Cambodia, and Brazil, and seized cash and cryptocurrency in accounts tied to ZHANG.

Drug Trafficking. On several occasions, agents recorded dinners in New York with ZHANG and his associates as they met with the UCs to discuss the mechanics of the money laundering operation. After a dinner on April 4, 2022, one of ZHANG's lieutenants, QING HUA SUN, asked whether the UCs would be interested in participating in another money-making venture, specifically distributing controlled substances in the Boston area. Thereafter, the UCs ordered multiple kilograms of cocaine or MDMA, better known as ecstasy, from ZHANG for distribution in Boston and paid for the drugs in Tether. ZHANG's associates delivered the kilograms to the UCs either to Jersey City, New Jersey or to Boston.

OFFENSE CONDUCT

(5) NGUYEN. On March 15, 2022, ZHANG advised one of the UCs to expect to receive a bulk cash delivery from a customer, eventually identified as THONG NGUYEN. ZHANG and the UC agreed on a 2% fee to convert the cash into Tether. Thereafter, by text, the cooperating witness working with the UC sent NGUYEN images of a dollar bill he would use to identify himself when picking up the cash. This method of identification (using dollar bill serial numbers as a confirmation code) is commonly used in the drug and money laundering trade so that co-conspirators who do not know each other can confirm each other's identities. NGUYEN and the cooperating witness arranged to meet the next day at the parking lot of a Chipotle restaurant in Saugus. On March 16, 2022, agents watched as the cooperating witness entered a Toyota Tacoma truck registered to NGUYEN after it pulled into the restaurant parking lot. During the recorded meeting, the cooperating witness showed NGUYEN the dollar bill he had previously photographed and sent to him by text. NGUYEN told the cooperating witness that the funds he was delivering were from marijuana sales and handed the cooperating witness a black bag containing $103,800. The UC then transferred Tether to ZHANG, minus a 2% fee of $2,080.

On April 11, 2022, ZHANG contacted the FBI cooperating witness and said that $100,000 needed to be collected from the same group he had met with before. Agents saw NGUYEN leave his home carrying two bags. Agents eventually asked a Massachusetts State Police trooper in a marked cruiser to conduct a traffic stop of NGUYEN on Route 495 near Wrentham. NGUYEN provided the trooper with a valid Massachusetts driver's license in his name. NGUYEN informed the trooper that he had a firearm under his seat in a lock box and that he had a license to carry the firearm (NGUYEN showed the license to the trooper). He also admitted that there was a bag of cash in the truck. NGUYEN claimed that the cash was a down payment for a real estate venture

that he had collected from family members, and that the cash had been in his truck for several days. Agents confirmed that one of the cell phones with NGUYEN was the phone used to communicate with the cooperating witness on March 16, 2022. Agents seized a Glock 43x 9 millimeter semiautomatic pistol, two Glock magazines containing ammunition, and a gray bag containing $109,850 in U.S. currency from NGUYEN's truck. NGUYEN was provided with a receipt and allowed to leave. Later that day, the cooperating witness received a text message from a dispatcher working for ZHANG's network which advised him that the driver could not meet him that day and that the meeting was cancelled.

(6) VILLA. On May 26, 2022, ZHANG advised the UC to expect to receive a bulk cash delivery from a customer. A dispatcher working for ZHANG contacted the cooperating witness over Telegram to set up a meeting with the courier at a Home Depot in Cranston, Rhode Island. The cooperating witness sent a photograph of a dollar bill to ZHANG to be passed on to the courier. When the cooperating witness arrived at the meeting location. ZHANG's dispatcher said that the courier was driving a black Chevrolet SUV. Ten minutes later, a black Chevrolet Equinox SUV registered to VILLA pulled into the parking lot. The cooperating witness entered VILLA's car. During a brief recorded meeting, the cooperating witness showed VILLA the dollar bill he had previously photographed and transmitted to ZHANG, and VILLA handed the cooperating witness a bag containing $75,860 in cash. The undercover agent then sent an equivalent amount of Tether minus a $1,520 fee, to ZHANG's digital wallet.

(10) CHEN. On July 20, 2022, ZHANG coordinated with the UCs to have drug money picked up in Chinatown and converted to Tether. At 12:27 p.m., YANBING CHEN approached a cooperating witness carrying a backpack and got into his car. As they drove to Chinatown, CHEN pulled a Starbucks bag from his backpack and told he cooperating witness he had $50,000 for him

and wanted to be driven to Chinatown for lunch before he took the bus back to New York. While in the car, CHEN placed a call to ZHANG on speakerphone and asked if he could provide the cash to the cooperating witness. ZHANG said yes. The two drove from South Station to Chinatown, where CHEN got out of the car, minus the backpack. After the bulk cash was provided to the cooperating witness, the UC converted the $50,000 to Tether and sent the funds to ZHANG's digital wallet, minus a $1,000 fee.

In addition to facilitating ZHANG's money laundering, CHEN, at ZHANG's behest, delivered five kilograms of cocaine to the UCs in Boston. On August 2, 2022, via messages over Telegram, an encrypted messaging application, ZHANG told the UC that he had three kilograms of cocaine available for delivery. He indicated that the price would be $27,000 per kilogram. On August 12, 2022, per ZHANG's direction, the UC and a cooperating witness drove to the South Station bus terminal. CHEN got into the UC and cooperating witness's car and told them to drive to Chinatown. A few minutes later, an unidentified man with a backpack joined CHEN in the backseat. The backpack contained three kilograms of cocaine, which the man left with the UC and cooperating witness. During previous communications, ZHANG and the UC agreed that when ZHANG's courier delivered the three kilograms, the UC would send ZHANG $30,000 in Tether. After the delivery, consistent with that agreement, the UC sent ZHANG confirmation that he had transferred $30,000 in Tether to ZHANG's digital wallet.

Through a series of calls and Telegram chats beginning on September 2, 2022, ZHANG and CHEN facilitated the delivery of two more kilograms of cocaine in Boston. The UC asked ZHANG whether he still planned to deliver additional quantities of cocaine, stating "[Y]our guy still coming up with stuff on Monday or Tuesday?" ZHANG responded, "Sunday I guess," and indicated that he "[w]ill pass to [the cooperating witness]." On September 4, 2022, ZHANG asked

the UC to give the cooperating witness a bank check to deliver to ZHANG's courier when picking up the cocaine. On September 5, 2022, CHEN met the cooperating witness near the intersection of Lincoln Street and Beach Street in Boston. The cooperating witness handed CHEN the bank check that ZHANG had asked for. CHEN then got into the backseat of the cooperating witness's car and removed two kilograms of cocaine from his backpack. After the delivery, the UC confirmed to ZHANG that he received the cocaine with a Telegram message: "Bro, got the stuff."

THE GUIDELINE SENTENCING RANGES

(5) NGUYEN. NGUYEN laundered $213,650 and acknowledged that the money he laundered was derived from marijuana sales. Even after an improperly assessed two-level reduction for minor role,[1] the United States Probation Office ("Probation") determined that NGUYEN's Total Offense Level ("TOL") was 19, his criminal history category ("CHC") was I, and his guidelines sentencing range ("GSR") was 30-37 months in prison. See NGUYEN Pre-Sentence Report ("PSR"), dated May 7, 2025, at ¶¶ 24, 30, 35, & 71.

---

[1] This is well-covered territory, but as the government argued at the sentencing hearings for co-defendants MARIANO SANTATA and QINLIANG CHEN, the government continues to believe that Probation and the Court have improperly applied minor role reductions in this case. (See ECF Nos. 212 & 355). To qualify for a minor role reduction, the defendant bears the burden of demonstrating that he is less culpable that most of those involved in the offense of conviction and that he is less culpable than most of those who have perpetuated similar crimes. United States v. Gomez-Encarnacion, 885 F.3d 52, 56-57 (1st Cir. 2018) (citing United States v. Mateo-Espejo, 426 F.3d 508, 512 (1st Cir. 2005)). Like SANTANA and QINLIANG CHEN, NGUYEN twice engaged in money laundering acts that fall within the heartland of criminal conduct prohibited by the statute. See, e.g., United States v. Ortiz-Santiago, 211 F.3d 146, 148-149 (1st Cir. 2000) (court denied minor role where defendant performed infrequent, relatively low level tasks like unloading drugs and surveillance); United States v Gonzalez-Soberal, 109 F.3d 64, 73-74 (1st Cir. 1997) (no minor role where defendant alleged he had only been a courier); United States v. Lopez-Gil, 965 F.2d 1124, 1131 (1st Cir. 1992) (same). Probation minimized NGUYEN's conduct by writing that his actions were "limited to two occasions" but failed to note or appreciate that law enforcement's seizure from NGUYEN of $109,850 (and a gun) during the second bulk cash delivery was certainly the reason NGUYEN's DTO stopped using ZHANG's services. In other words, the total amount laundered by NGUYEN reflects not his minor role but rather the fact that his further involvement was cut off because of intervention by law enforcement.

(6) VILLA. Based on VILLA's single money laundering transaction, Probation determined his TOL was 12. Probation determined that VILLA had three criminal history points, placing him in CHC II, which resulted in a GSR of 12-18 months in prison. See VILLA PSR, dated March 6, 2025, at ¶¶ 24, 31, & 67.

(10) CHEN. The determined that CHEN's TOL, dictated by the five kilograms of cocaine attributable to him grouped together with his money laundering activity, was 25; his CHC was I, and his GSR was 57-71 months in prison. See CHEN PSR, dated May 2, 2025, at ¶¶ 31, 36, & 66.

## ARGUMENT

Below, the government has grouped defendants charged in the superseding indictment into three camps which roughly reflect the government's view of the defendants' respective culpability:

I. The first group includes ZHANG, the undisputed leader, and his lieutenant, QING HUA SUN, who among other conduct traveled with ZHANG to Cambodia to strengthen ZHANG's connections to internet scam compounds based there.

II. The second group includes ZHANG's regular employees or individuals who possessed a special skill useful to his money laundering operation. This group includes YANBING CHEN and XIONG LIN, New York-based associates of ZHANG's who participated in substantial money laundering and drug trafficking with ZHANG; RONGJIAN LI, a Bank of America employee who helped ZHANG open accounts to launder "scam" money and helped ZHANG evade the bank's financial auditing systems; and FENG CHEN, a longtime friend of ZHANG's who over six transactions helped ZHANG launder and unlawfully transmit without a license over $600,000 in cash and checks. ZHANG also worked with ROGER LUO, a Quincy man, to facilitate bulk cash pick-ups in the Boston area, and LICHENG HUANG, the individual who first approached an FBI cooperating witness about laundering funds for ZHANG.

III. The final group includes individuals who worked for drug trafficking organizations and brought bulk cash drug proceeds to ZHANG for him to launder. These include THONG NGUYEN, QINLIANG CHEN, MARIANO SANTANA, and AUGUSTIN VILLA.

Based on the information currently in its possession, the government's assessment of the relative culpability for all twelve defendants in the superseding indictment is set out in the following table.

The three defendants to be sentenced in the coming week—NGUYEN, VILLA, and CHEN—are highlighted in yellow:

| Culpability Group | Defendant | Role | GSR | Sentence |
|---|---|---|---|---|
| I. | (1) JIN HUA ZHANG | Leader. Laundered at least $25 million in drug trafficking and internet scam money, facilitated kilogram-level sales of cocaine and MDMA | TBD | Sentencing set for September 30, 2025 |
| I. | (12) QING HUA SUN | Lieutenant. Traveled with ZHANG to Cambodian compounds engaged in internet-based scams | TBD | Sentencing set for September 16, 2025 |
| II. | (10) YANBING CHEN | Laundered funds for ZHANG and delivered 5 kilograms of cocaine to Boston for ZHANG | 57-71 months | Gov. rec. 71 months, 5 years SR (mandatory) |
| II. | (11) XIONG LIN | NY based associate of ZHANG's. Laundered funds for ZHANG and delivered 1 kilograms of cocaine and 1 kilogram of MDMA intended for distribution in Mass. | TBD | Trial to begin July 28, 2025 |

| | | | | |
|---|---|---|---|---|
| II. | (8) RONGJIAN LI | NY-based Bank of America employee helped ZHANG evade detection while laundering funds | TBD | Gov. rec. 48 months in prison. Sentencing set for August 13, 2025 |
| II. | (3) FENG CHEN | Long-time friend of ZHANG's, laundered over $600,000 in drug money and bank checks over six transactions | TBD | Trial to begin July 28, 2025 |
| II. | (4) ROGER LUO | Mass.-based employee of ZHANG organization, laundered funds, stole funds from ZHANG | TBD | Sentencing set for November 4, 2025 |
| II. | (2) LICHENG HUANG | Mass.-based employee of ZHANG organization. First approached FBI CW about laundering funds | 24-30 moths | Gov. rec. 30 months, sentence imposed 1 year and 1 day, 2 years SR |
| III. | (5) THONG NGUYEN | Laundered $213,650 in drug proceeds | 30-37 months | Gov. rec. 30 months, 2 years SR |
| III. | (9) QINLIANG CHEN | Twice traveled from California to Florida to launder $287,580 through ZHANG | 18-24 months | Gov. rec. 30 months, sentence imposed 15 months, 2 years SR |
| III. | (7) MARIANO SANTANA | Low-level money courier with history of drug and health issues | 15-21 months | Gov. rec. 18 months, sentence 14 months, 3 years SR |

| | | | | |
|---|---|---|---|---|
| III. | (6) AUGUSTIN VILLA | Low-level money courier with history of theft convictions | 12-18 months | Gov. rec. 15 months, 3 years SR |

(5) NGUYEN and (6) VILLA. The government's recommendations with respect to NGUYEN and VILLA are best understood in relation to each other. NGUYEN and VILLA each transported bulk cash from drug organizations to members of ZHANG's organization to be converted into cryptocurrency by ZHANG and laundered. For years, VILLA has eked out a living through a series of low-paying temporary jobs. He suffered from what even he described as "problematic gambling." His criminal convictions include a 2016 conviction and 60-day prison sentence for larceny, after he stole over $3,000 from a fellow customer at a casino; and a second larceny conviction in 2017 involving another casino customer, for which he was sentenced to one year in prison. See VILLA PSR, ¶¶ 28-29. The government's 15-month recommendation here is chiefly based on the need to promote respect for the law as well as the need to specifically deter VILLA from committing additional, similar crimes in the future.

NGUYEN has none of VILLA's disadvantages. He has no past or current medical concerns and no history of mental health or substance abuse issues. He grew up in a loving and supportive home, held down a series of well-paying jobs, and is in a committed relationship where he and his partner recently purchased a new $800,000 home. And yet NGUYEN laundered over $200,000 in money he knew to be derived from drug trafficking. NGUYEN's conduct appears driven by greed. But for the decision by agents to stop his car and seize his money while on the way to make his second delivery, NGUYEN would likely still be engaged in this serious criminal conduct today.

(10) CHEN. Of the three defendants being sentenced here, YANBING CHEN certainly is the most culpable. CHEN traveled from New York to Boston to deliver $50,000 in bulk cash to a

cooperating witness in order for ZHANG to launder the funds. In addition to the money laundering conduct captured in this case, CHEN pleaded guilty to several similar charges based on a separate but contemporaneous investigation brought in the Eastern District of New York ("EDNY"). CHEN pleaded guilty to money laundering conspiracy and aggravated identity theft, and in his plea agreement stipulated that he also committed conduct that constituted bank fraud and passport fraud. See Exhibit 1 (EDNY prosecution sentencing memorandum).[2]

In addition to his participation in this kind of day-in, day-out financial fraud and theft (also captured in the instant superseding indictment), CHEN twice traveled from New York to Boston to deliver a total of five kilograms of cocaine for ZHANG, conduct that but for CHEN's safety-valve proffer would have required the imposition of a ten-year mandatory minimum sentence. ZHANG's organization engaged in large-scale money laundering for drug traffickers and internet-based scammers and facilitated kilogram-sized drug distributions. In light of CHEN's immersion in both aspects of ZHANG's criminal activities—money laundering and drug trafficking—a high-end of the guidelines sentence of 71 months is appropriate.

[2] As here, the EDNY investigation established that ZHANG used a network of individuals, including CHEN, to help him launder funds from internet-based scams. CHEN, using two shell companies he operated under an alias, laundered over $1 million from three separate victims. He also used a stolen New York driver's license to open bank accounts used to launder the funds, thereby engaging in bank fraud and aggravated identity theft. Further, the EDNY investigation developed evidence that CHEN worked for ZHANG's unlicensed money remitting business. Using a fake Chinese passport and the stolen new York driver's license, CHEN converted over $3 million in cash to cashier's checks for ZHANG and received a percentage of the cash he converted as a fee. Id. Based on the conduct captured in their case, prosecutors in EDNY recommended a 54-61 month sentence for CHEN. Exhibit 1.

## CONCLUSION

For the reasons set out above, the government requests that the Court sentence NGUYEN to 30 months in prison and two years of supervised release; VILLA to 15 months in prison and three years of supervised release; and CHEN to 71 months in prison and five years of supervised release. These sentences are sufficient to achieve general deterrence, to specifically deter these defendants, to promote respect for the law, and to protect the public. See 18 U.S.C. § 3553(a).

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: /s/ Christopher Pohl
Christopher Pohl
Brian A. Fogerty
Meghan C. Cleary
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 20, 2025.

/s/ Christopher Pohl
Christopher Pohl
Assistant U.S. Attorney